PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Richard H. Hikida, Bar No. 196149
rhikida@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN KISSEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CODE 42 SOFTWARE, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. 8:15-cv-01936-JLS-KES<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date:         September 1, 2017<br>Time:         2:30 p.m.<br>Courtroom:  10-A<br>Judge:        Josephine L. Staton |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    SUMMARY OF ALLEGATIONS ........................................................ 3

    A.    Plaintiff's Allegations Regarding the Automatic Renewal Law ................................................................................................. 3

    B.    Procedural History and Settlement Negotiations .......................... 4

III.   THE PROPOSED SETTLEMENT AGREEMENT .............................. 5

    A.    Benefits Provided to the Settlement Class ................................... 6

        1.    Monetary Compensation ................................................... 6

        2.    Code42's Auto-Renewal Practices .................................... 7

    B.    Notice Program ............................................................................ 7

        1.    Direct Notice to Class Members ....................................... 7

        2.    Settlement Website, Toll-Free Number and Address ........... 8

    C.    Requests for Exclusion ................................................................ 9

    D.    Submitting Objections and Appearance at Final Approval ......... 10

    E.    Administration Costs ................................................................. 11

    F.    Payment of Attorneys' Fees and Costs ..................................... 11

    G.    Service Payment to Plaintiff ...................................................... 11

    H.    Release to Code42 ..................................................................... 11

IV.   ARGUMENT .................................................................................... 11

    A.    The Settlement Class May Be Certified for Settlement Purposes ................................................................................... 12

        1.    Rule 23(a) is Satisfied ................................................... 12

            a)    The Settlement Class is Sufficiently Numerous ..................... 12

            b)    Common Questions Predominate .......................... 12

            c)    Plaintiff's Claims Are Typical to Those of the Class ................................................................... 13

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

        d)     Plaintiff and Class Counsel Will Adequately Protect the Interests of the Class.................................14

    2.    Rule 23(b)(3) is Satisfied ..................................15

B.    Preliminary Approval of the Settlement Agreement is Appropriate........................................................15

    1.    The Settlement Agreement Was Reached Via Arms-Length Negotiations and After Thorough Investigation ...............................................16

    2.    The Settlement Agreement is Fair, Reasonable and Adequate Considering the Alleged Harm and Risk of Litigation ..................................................17

    3.    Counsel's Experience Favors Preliminary Approval..........................20

C.    The Proposed Direct Notice Program Is Reasonable and Should be Approved ................................................20

V.    CONCLUSION.........................................................21

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)................................................................................15

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .......................................................20

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...........................................................16, 21

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .........................................................16, 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................12, 13, 14, 16

*Hanlon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................12, 13, 14

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................................17

*In re Pacific Enterprises Securities Litigation*,
   47 F.3d 373 (9th Cir.1995) ....................................................................20

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ...............................................................16

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007)..................................................16

*In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions
   Act (FACTA) Litigation*,
   295 F.R.D. 438 (C.D. Cal. 2014)............................................................20

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810
   (1982)......................................................................................................12

*Kissel v. Code 42 Software, Inc.* (C.D. Cal., Apr. 14, 2016)
   2016 WL 7647691 ...................................................................................4

*L.H. v. Schwarzenegger*,
  No. CIV. S-06-2042LKKGGH, 2007 WL 662463 (E.D. Cal. Feb. 28,
  2007) ................................................................................................... 14

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F. 2d 507 (9th Cir. 1978) ................................................................ 15

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas
  Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ............................................................... 15

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ................................................................. 14

*Otsuka v. Polo Ralph Lauren Corp.*,
  251 F.R.D. 439 (N.D. Cal. 2008) ........................................................... 15

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005) ........................................................... 14

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ...................... 13

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ............................................................... 15

*Williamson v. Mcafee, Inc.*
  (N.D. Cal., Aug. 30, 2016, No. 5:14-CV-00158-EJD) 2016 WL
  4524307 .............................................................................................. 18

*Zinser v. Accufix Research Inst.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................... 12

**California Statutes**

California Business & Professions Code
  § 17200 *et seq.* ............................................................................*passim*
  § 17535 .................................................................................................. 4
  §§ 17600-06 ........................................................................................... 7
  § 17600 *et seq.* ..................................................................................... 1
  § 1760l ................................................................................................. 13
  § 17601(a) .............................................................................................. 5
  § 17601(b) .............................................................................................. 3
  § 17601(d) .............................................................................................. 5
  § 17601(e) .............................................................................................. 5
  § 17602(a)(1).................................................................................. 3, 7, 13

§ 17602(a)(2)..................................................................................7
§ 17602(a)(3)................................................................................13

California Civil Code
§ 1542.........................................................................................11

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................4

Fed. R. Civ. P.  23 .....................................................................11

Fed. R. Civ. P. 23(a).......................................................12, 13, 14

Fed. R. Civ. P. 23(a)(1) ..............................................................12

Fed. R. Civ. P. 23(a)(2) ..............................................................13

Fed. R. Civ. P. 23(a)(3) .........................................................13, 14

Fed. R. Civ. P. 23(a)(4) ..............................................................14

Fed. R. Civ. P. 23(b) ..................................................................12

Fed. R. Civ. P.23(b)(2)................................................................15

Fed. R. Civ. P. 23(b)(3) ..............................................................15

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................20

Fed. R. Civ. P. 23(c)(3) ..............................................................21

Fed. R. Civ. P. 23(e)(2) ..............................................................16

## I.    INTRODUCTION

Plaintiff Jordan Kissel ("Plaintiff") respectfully requests the Court's preliminary approval of a proposed Class Action Settlement Agreement ("Settlement Agreement")[1] resolving this action on a class-wide basis.   Pursuant to the proposed Settlement Agreement, Defendant Code42 Software, Inc. ("Code42") (collectively with Plaintiff, the "Parties") will provide a full-distribution, non-reversionary $400,000 Common Fund that will provide a settlement payment of approximately $7.00-$7.50 to all members of the Settlement Class.   The settlement amount represents compensation for Code42's alleged violation of California Business & Professions Code Section 17600 *et seq.*, (the "Automatic Renewal Law") for which the Settlement Class received the benefit of the bargain, i.e. the Settlement Class received the service for which they paid and will be receiving this additional monetary benefit on top thereof.   In the aggregate, the approximately 32,200 Class Members will receive approximately $247,500 (Net Settlement Amount).

Additionally, Code42 has already implemented important changes to its auto-renewal transactions with regard to both pre-purchase disclosures and post-purchase acknowledgements provided to the Settlement Class and other consumers of Code42's services.   The Settlement Agreement acknowledges the changes already made by Code42 and solidifies its agreement to maintain its compliance with the Automatic Renewal Law in the updated form currently provided to consumers, or in some other form that complies with the Automatic Renewal Law in the future should Code42 opt to modify or update its disclosure and acknowledgement language.

The Settlement Agreement is the product of extensive arms-length negotiations between the Parties and their counsel, who, based on extensive experience in class action litigation, and after a full airing of the applicable facts, find the Settlement Agreement to be fair, reasonable, and adequate given the claims, the relief sought, and

---

[1] The proposed Class Action Settlement Agreement is attached to the concurrently filed supporting declaration of Scott J. Ferrell as Exhibit A.

the Parties' respective litigation risks. The Settlement Agreement falls well-within the range of reasonableness applicable at the preliminary approval stage.

The Settlement Agreement also provides for a robust, multi-form direct notice program that is well-tailored to provide Class Members the best notice practicable of the Action, the terms of the Settlement Agreement, Class Counsel's fee and cost application, and Class Members' opt-out rights and rights to object. Further, the Common Fund provided in the Settlement Agreement accounts for the costs of the Settlement Administrator, including the costs of notice and distribution of the settlement benefits, in addition to (*i.e.,* on top of) the other benefits of the Settlement Agreement.

Plaintiff and her undersigned counsel believe the Settlement Agreement to be in the best interests of the Class Members and seek to begin the Court approval process that is required for all class action settlements.  Plaintiff therefore respectfully requests that the Court review the Settlement Agreement, which is attached as Exhibit A to the declaration of Class Counsel, and likewise grant the following:

1.    Grant preliminary approval of the Settlement Agreement;

2.    For settlement purposes only, certify the proposed Settlement Class, as defined in the Settlement Agreement;

3.    Appoint Scott J. Ferrell, David W. Reid, and Victoria C. Knowles of Pacific Trial Attorneys APC as Class Counsel;

4.    Appoint Plaintiff Jordan Kissel as the Class Representative;

5.    Approve the Parties' proposed notice program, including the proposed forms of notice, as set forth in the Settlement Agreement, and direct that notice be disseminated pursuant thereto;

6.    Appoint JND ("JND") Class Action Administrator as Settlement Administrator, and direct JND to carry out the duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement;

7.    Approve the Parties' proposed monetary settlement benefit to the Settlement Class, approve the procedures set forth in the Settlement Agreement for the

qualifications of Class Members, approve the method for Class Members to exclude themselves from the Settlement Class, and for Class Members to object to the Settlement;

8.    Stay all non-settlement related proceedings pending Final Approval of the Settlement Agreement; and

9.    Set a Final Approval Hearing and other dates in connection with the final approval of the Settlement Agreement.

## II.    SUMMARY OF ALLEGATIONS

### A.    Plaintiff's Allegations Regarding the Automatic Renewal Law

As set forth in the First Amended Complaint ("FAC"), Plaintiff alleges four causes of action for violations of the Automatic Renewal Law and California's Unfair Competition Law (Cal. Bus. & Prof. Code §17200 *et seq.*) ("UCL").  Specifically, she alleges that Code42: (1) violated Business & Professions Code § 17602(a)(l)) by failing to present automatic renewal offer terms[2] and/or continuous service offer terms "clearly and conspicuously" and in "visual proximity" "to the request for consent to the offer" (First Cause of Action); (2) violated sections 17602(a)(2) and 17603 by failing to obtain Plaintiff's affirmative consent before the subscription was fulfilled (Second Cause of Action); (3) violated sections 17602(a)(3) and 17602(b) by failing to provide an acknowledgment with automatic renewal offer terms and information regarding Code42's cancellation policy (Third Cause of Action); and (4) due to these enumerated violations, in turn, violated the UCL (Fourth Cause of Action).

---

[2] "'Automatic renewal offer terms' means the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  (Cal. Bus. & Prof. Code § 17601(b).)

As factual support for these claims, Plaintiff alleges that she purchased a subscription for Code42's "CrashPlan" computer backup and related services. (FAC, ¶¶ 7, 17). While the terms and conditions on Code42's website, code42.com/crashplan, at the time of purchase contained some information concerning the subscription and related issues, Plaintiff alleges the information was buried within numerous other provisions, and it was not set forth with the requisite clarity required by the Automatic Renewal Law. (FAC, ¶¶ 18-19). Additionally, the Plaintiff alleges the pages on Code42's website whereby the subscription purchase was completed did not include the requisite information concerning the automatic renewal of the subscription or information concerning how that subscription could be cancelled. (FAC, ¶¶ 20-23). Finally, Plaintiff alleges the acknowledgment of purchase provided to Plaintiff did not contain the requisite automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that was capable of being retained by Plaintiff. (FAC, ¶ 24).

**B.    Procedural History and Settlement Negotiations**

Plaintiff filed her original class action complaint as "Jane Doe" against Code42 on November 19, 2015 (Dkt. No. 1). On February 10, 2016 Plaintiff filed the FAC (Dkt. No. 17) identifying herself and likewise making other amendments to the operative complaint, including the elimination of a cause of action for injunctive relief pursuant to Cal. Bus. & Prof. Code § 17535.

Thereafter, on February 29, 2016, Code42 moved to dismiss the FAC (Dkt. No. 19) pursuant to Federal Rule of Civil Procedure 12(b)(6). On April 14, 2016 this Court issued its Order Denying Defendant's Motion to Dismiss, *Kissel v. Code 42 Software, Inc.* (C.D. Cal., Apr. 14, 2016) 2016 WL 7647691 (Dkt. No. 25). On April 28, 2016, Code42 filed its Answer to Plaintiff's FAC (Dkt. No. 29).

The Parties thereafter engaged in an informal exchange of discovery, including the revisions Code42 made to its auto-renewal practices in response to Plaintiff's allegations. Code42 revised and enhanced its disclosures and acknowledgments to

consumers relating to the Automatically Renewing Services offered to Consumers in the State of California.  Specifically, Code42 now presents its automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled, and is presented in visual proximity to the request for consent to the offer on its website, thus ensuring consumers' affirmative consent to the agreement containing the automatic renewal offer terms.  Additionally, Code42 now provides an acknowledgment that includes the automatic renewal or continuous service offer terms, its cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  In its acknowledgment, Code42 likewise provides a toll-free telephone number, electronic mail address, and a postal address which provides a cost-effective, timely, and easy-to-use mechanism for cancellation of the automatically renewing subscription.  (Settlement Agreement at 3.02).

The informal exchange of discovery between the Parties led to extensive, arms-length settlement negotiations to resolve this Action on a class-wide basis.  On March 3, 2017 the Parties reached a class-wide settlement in principle and filed a Joint Notice of Proposed Class Action Settlement (Dkt. No. 33) pursuant thereto.  Since that time the Parties have worked diligently to finalize the Settlement Agreement, work out a multi-facetted notice plan therefor, and retain a Settlement Administrator to effectuate the robust relief provided thereby.

## III.    THE PROPOSED SETTLEMENT AGREEMENT

Plaintiff seeks to certify the following Settlement Class:

> All "Consumers" (as that term is defined by California Business and Professions Code § 17601(d)) within the State of California who purchased any product or service from Code42 as part of an "Automatic Renewal" or "Continuous Service" plan or arrangement (as those terms are defined by California Business and Professions Code § 17601(a) and (e)) between November 19, 2011 and November 19, 2015, inclusive (the "Class Period"), and who were subsequently charged by and paid Code42 one or more fees for the renewal of the product or service beyond the original term prior to July 24, 2017, the effective date of the Settlement Agreement. Excluded from the Settlement Class are the officers and directors of Code42, members of the immediate families of the officers and directors of

Code42, and their legal representatives, heirs, successors or assigns, and any entity in which they have or have had a controlling interest.

(Settlement Agreement at 2.01).

### A.   Benefits Provided to the Settlement Class

#### 1.   Monetary Compensation

Pursuant to the Settlement Agreement, Code42 has agreed to create a Common Fund in the total amount of Four Hundred Thousand Dollars ($400,000) for the payments to members of the Settlement Class, payment of claims administration, attorneys' fees and costs, and a Service Payment to Plaintiff. (Settlement Agreement at 3.01). Exclusive of the requested attorneys' fees and costs, the requested incentive payment to Plaintiff for her role as Class Representative, and the estimated $40,000 for Class Administration, it is estimated that approximately $247,500 shall be payable directly to Class Members ("Net Settlement Amount"). It is estimated that there are 32,200 Class Members and as such, it is anticipated that each Class Member will receive approximately $7.00-$7.50 each from the Common Fund.

The Settlement Agreement proposes each Class Member to be paid their settlement benefit via their registered email address with Code42 and a PayPal link. Notice will be provided directly to Class Members via email and, if necessary, by mail. Members of the Settlement Class will not be required to submit a claim to receive benefits under the Settlement Agreement. Individuals who believe that they are or may be members of the Settlement Class but who do not receive a Class Notice may, however, submit a claim form to the Settlement Administrator to request that they be included on the Final Settlement Class Member List and receive a Benefit Payment following Final Approval. (Settlement Agreement at 4.07; Ex. C).

Pursuant to the Settlement Agreement, within the later of (a) forty-five (45) days after Final Approval or (b) fifteen (15) days after final court resolution of any objection, the Settlement Administrator shall send the Benefit payment via PayPal directly to each Class Member. (Settlement Agreement at 5.02).

### 2.    Code42's Auto-Renewal Practices

Code42 has already undertaken steps to remediate the alleged violations of the Automatic Renewal Law in response to the allegations raised by Plaintiff. Code42 revised and enhanced its disclosures and acknowledgments to Consumers relating to the Automatically Renewing Services offered to Consumers in the State of California. Specifically, pursuant to California Business & Professions Code § 17602(a)(1), (2), Code42 now presents its automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled, and is presented in visual proximity to the request for consent to the offer on its website, thus ensuring consumers' affirmative consent to the agreement containing the automatic renewal offer terms. Additionally, in accordance with section 17602(a)(3), Code42 now provides an acknowledgment that includes the automatic renewal or continuous service offer terms, its cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. In its acknowledgment, Code42 likewise provides a toll-free telephone number, electronic mail address, and a postal address which provides a cost-effective, timely, and easy-to-use mechanism for cancellation of the automatically renewing subscription in compliance with section 17602(b). Code42 will continue to provide such disclosures, either in the form that Code42 has used since November 2015, or in some other form that complies with the provisions of California Business & Professions Code sections 17600-06, in relation to the Automatically Renewing Services that Code42 offers to Consumers in the State of California. (Settlement Agreement at 3.02).

### B.    Notice Program

### 1.    Direct Notice to Class Members

Notice of the Settlement Agreement will be provided directly to Class Members by the Settlement Administrator based on a Class Member list created by Code42. Notice shall be provided directly via email using the email address associated with Class Members' accounts with Code42, and additionally, should the Notice "bounce

back", Notice will be provided additionally via mail as a Postcard Notice. (Settlement Agreement at Ex. A - B).

Specifically, Code42 will provide the list of the names and current email addresses of Class Members to the Settlement Administrator, based upon Code42's current and most up to date business records. (Settlement Agreement at 4.02). Within thirty (30) days of the Preliminary Approval Date, the Settlement Administrator shall e-mail the Class Notice to each member of the Settlement Class at the email addresses provided by Code42. (Settlement Agreement at 4.03).

Thereafter, if the Settlement Administrator receives notice that any Class Notice sent to a member of the Settlement Class is undeliverable or if Class Notice otherwise "bounces back," the Settlement Administrator will notify Code42 and request that Code42 provide a physical mailing address for the member of the Settlement Class for whom the Class Notice was undeliverable.  Code42 will provide the most recent physical mailing address for each such member of the Settlement Class that is reasonably accessible to Code42, and within seven days thereafter, the Settlement Administrator will mail a Postcard Notice to the member of the Settlement Class at the address provided by Code42.  If the Postcard Notice is returned by the U.S. Postal Service as undeliverable, the Settlement Administrator will mail the Postcard Notice to the forwarding address, if any.  If the returned Postcard Notice does not include a forwarding address, the Settlement Administrator will provide Class Counsel with the name and address of the member of the Settlement Class for whom the Postcard Notice was returned, and Class Counsel may thereafter conduct further research for the contact information for the member of the Settlement Class for whom the Postcard Notice was returned. (Settlement Agreement at 4.04).

### 2.     Settlement Website, Toll-Free Number and Address

Additionally, within thirty days of the Preliminary Approval Date, the Settlement Administrator shall initiate the Settlement Website which will have links that provide a viewer with information regarding (a) the Action, (b) the Settlement, (c) the key

deadlines in the Settlement process; (d) how to submit a Claim Form, and (e) how to contact the Settlement Administrator or Class Counsel for more information. The Settlement Website will be administered by the Settlement Administrator. The Settlement Website will be available prior to the date of the emailing of the Class Notice and will remain available until at least ninety (90) days after the Settlement payments have been distributed to members of the Settlement Class. (Settlement Agreement at 4.05). Also, within thirty days of the Preliminary Approval Date, and continuing until one-hundred eighty days after Final Approval, the Settlement Administrator shall maintain an address and toll-free telephone number to receive inquiries with regard to the Settlement.

As stated previously herein, Members of the Settlement Class will not be required to submit a claim form to receive benefits under this Settlement Agreement. Individuals who believe that they are or may be members of the Settlement Class but who do not receive a Class Notice may, however, submit a claim form to the Settlement Administrator to request that they be included on the Final Settlement Class Member List and receive a Benefit Payment following Final Approval.

### C.    Requests for Exclusion

Each member of the Settlement Class may request exclusion from the Settlement Class. Any person who completes and submits a valid Request For Exclusion will be excluded from the Settlement Class and will not receive any payment or other benefit from the Settlement, and will not be bound by the terms of the Settlement Agreement. Any person who validly completes a Request For Exclusion will not have standing to object to certification of the Class, object to the terms of Settlement, or intervene in the Action. (Settlement Agreement at 4.10).

To be excluded, a member of the Settlement Class must mail a Request For Exclusion to the Settlement Administrator. The Class Notice and the Settlement Website will inform each member of the Settlement Class of the right to request exclusion, the deadline for exercise of that right, and the address to which Requests For

Exclusion must be sent.  For a Request For Exclusion to be valid, it must (a) state the full name of the member of the Settlement Class requesting exclusion; (b) identify the e-mail address associated with the Code42 account that the member of the Settlement Class uses or used; (c) contain the original signature of the member of the Settlement Class; and (d) unequivocally state the intent of the member of the Settlement Class to be excluded from the Class and the Settlement.  (Settlement Agreement at 4.11).

### D.   Submitting Objections and Appearance at Final Approval

Any member of the Settlement Class may object to the Settlement or to certification of the Settlement Class.  (Settlement Agreement at 4.15).  To object, prior to the deadline set by the Court, the Class Member must complete a written objection ("Objection"), file the Objection with the Court, and serve the Objection on Class Counsel and Counsel for Code42.  The Class Notice and the Settlement Website will inform each member of the Class of the right to object, the deadline for exercise that right, and the addresses of the Court, Class Counsel, and Counsel for Code42.  For an Objection to be valid, it shall be required to (a) state the full name, current address, and telephone number of the member of the Settlement Class submitting the Objection; (b) identify the e-mail address associated with the Code42 account that the member of the Settlement Class uses or used; (c) state that the member of the Settlement Class objects to the Settlement, or to certification of the Settlement Class, in whole or in part; (d) state the legal and/or factual basis for the Objection; and (e) provide copies of any documents that the member of the Settlement Class wishes the Court to consider in connection with the Objection.  (Settlement Agreement at 4.16).

Any member of the Settlement Class may likewise appear (either *pro se* or through counsel) at the Court Approval Hearing.  To exercise the right to appear at the Court Approval Hearing, a member of the Settlement Class shall file a Notice of Appearance in the Action with the Court and serve the Notice of Appearance upon Class Counsel and Counsel for Code42 within the time set by the Court.  No member of the Settlement Class shall be permitted to raise matters at the Court Approval Hearing

that the member of the Settlement Class could have raised in an Objection, but failed to do so.  (Settlement Agreement at 4.17).

### E.    Administration Costs

The costs of the Settlement Administrator shall be paid from the Common Fund. (Settlement Agreement at III).

### F.    Payment of Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Class Counsel may apply to the Court for its reasonable attorneys' fees and costs associated with this Action not to exceed 25% of the Common Fund, or $100,000.  (Settlement Agreement at 4.21).[3]

### G.    Service Payment to Plaintiff

Class Counsel shall request, and Code42 has agreed not to oppose, a Service Payment to Plaintiff in the amount of $2,500 to compensate her for her time and efforts in this Action.  Any Service Payment awarded shall be paid from the Common Fund. (Settlement Agreement at 1.31).

### H.    Release to Code42

In exchange for the benefits provided by the Settlement Agreement, Class Members will release Code42 from any claims they may have related to the issues presented in this Action.  (Settlement Agreement at VI).  Additionally, Plaintiff shall provide a release pursuant to California Civil Code § 1542.

## IV.    ARGUMENT

The three-step procedure for approval of class action settlements pursuant to Federal Rule of Civil Procedure 23 are: (1) Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval; (2) Dissemination of notice of the proposed

---

[3] Class Counsel's fee and cost application, and the amount that will be requested therein, will appropriately account for Class Counsel's commitments of time and resources in prosecuting these cases, the results achieved for the Class Members, the risks that Class Counsel assumed in taking on these cases, the complexity of the issues involved, and applicable law.

settlement to the affected class members; and (3) A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented. *See* Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), §§ 21.63 *et seq*. This procedure ensures class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. *See* 4 Newberg on Class Actions, § 11.22 *et seq.* (4th ed. 2002) ("Newberg").

Plaintiffs respectfully request that the Court take the first step in the settlement approval process by granting provisional certification of the proposed Settlement Class and granting preliminary approval of the proposed Settlement Agreement; appointing a Settlement Administrator; directing that notice be disseminated to the Class Members pursuant to the proposed notice program; and issuing the related relief requested herein.

**A.    The Settlement Class May Be Certified for Settlement Purposes**

To certify a proposed class, it must be demonstrated that "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst*., 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanlon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)) (emphasis added), *amended by* 273 F.3d 1266 (9th Cir. 2001).

**1.    Rule 23(a) is Satisfied**

**a)    The Settlement Class is Sufficiently Numerous**

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members.  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).  Here, Code42's records indicate there are approximately 32,200 Class Members and as such, numerosity is satisfied.

**b)    Common Questions Predominate**

Rule 23(a)(2) requires that there be one or more questions common to the class. *See Hanlon*, 150 F.3d 1011, 1019 (9th Cir. 1998); 1 Newberg § 3.10; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). The causes of action raise questions common to the Settlement Class, including: (i) whether Code42 failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) whether Code42 charged the Class Members' Payment Method for an automatic renewal or continuous service without first obtaining Class Members' affirmative consent in violation of Cal. Bus. & Prof. Code§ 17602(a)(2); (iii) whether Code42 failed to provide an acknowledgement that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Class Members in violation of Cal. Bus. & Prof. Code § 17602(a)(3); and (iv) whether Code42's Terms and Conditions contained the automatic renewal offer terms and/or continuous service offer terms as defined by Cal. Bus. & Prof. Code § l760l.  (FAC at ¶ 28).

### c)    Plaintiff's Claims Are Typical to Those of the Class

"The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"  *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(3)).  "Under the rule's *permissive* standards, representative claims are 'typical' if they are *reasonably co-extensive* with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020 (emphasis added).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon*, 976 F.2d at 508.  "'Typicality refers to the *nature* of the claim or defense of the class representative, and *not to the specific facts from which it arose* or the relief sought.'"  *Id.* (citation omitted) (emphasis added).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citation omitted). "Under Rule 23(a)(3), it is not necessary that all class members suffer the same injury as the class representative." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (citing *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.")); *L.H. v. Schwarzenegger*, No. CIV. S-06-2042LKKGGH, 2007 WL 662463, at *12 (E.D. Cal. Feb. 28, 2007) (holding that "minor differences among the class are inconsequential," and rejecting the defendants' assertion that plaintiffs had not shown sufficient evidence that each plaintiff was disabled since the deprivations complained of by plaintiffs affected the entire class).

Here, Plaintiff's claims stem from the same common course of conduct as the claims of the Class Members. Plaintiff and all members of the Settlement Class were presented with the same auto-renewal disclosures and post-purchase acknowledgements via email. Indeed, the Settlement Class is specifically delineated by date, i.e. November 19, 2011 and November 19, 2015, to include only those consumers who were offered the same auto-renew disclosures and received the same post-purchase auto-renew acknowledgement.

### d)   Plaintiff and Class Counsel Will Adequately Protect the Interests of the Class

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)). "Resolution of two questions determines legal adequacy: (1) does the named plaintiff and her counsel have any conflicts of interest with other class members; and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class?" *Id.* The class representative may not have

interests antagonistic to the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978). Both questions are answered in the affirmative here.

First, Plaintiff's interests are aligned with those of the Class. She has no conflicts of interests and is not antagonistic to the Class. Second, proposed Class Counsel has extensive experience in class action litigation. Class Counsel has demonstrated experience in handling all aspects of class actions, and is well qualified to represent the classes. (Ferrell Decl., ¶¶ 7-14). Additionally, Plaintiff and proposed Class Counsel remain fully committed to advancing the interests of, and obtaining relief for, the Class Members as evidenced by the Settlement Agreement and the robust relief provided therein. (*Id.*; Kissel Decl., ¶¶ 3-5).

### 2. Rule 23(b)(3) is Satisfied

Pursuant to Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[, e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). *Id.*

As already expressed herein, Plaintiff and the Class allege that Code42 had a standard and uniform practice of failing to comply with the Automatic Renewal Law by failing to comply with the pre-purchase notification and post-purchase acknowledgement requirements. Common issues predominate here. That is particularly so given that, if the proposed Settlement Agreement is approved, there will be no need for a trial, and thus manageability of the Settlement Class for trial need not be considered. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

Additionally, a class action is superior to other methods of litigation where, as here, class treatment will promote greater efficiency. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008).

### B. Preliminary Approval of the Settlement Agreement is Appropriate

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026. The Court should give "proper deference to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027; *see also* Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, a court need only find that the proposed settlement is within the "range of reasonableness," such that dissemination of notice to the class and the scheduling of a fairness hearing are worthwhile and appropriate. 4 Newberg § 11.25; *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

The Settlement Agreement satisfies the standard for preliminary approval because: (1) it is the product of hard-fought, arms-length negotiations between the parties, reached after a thorough investigation by Class Counsel of the facts and the law; (2) it provides relief that is appropriately tailored to the alleged harm, and is fair, reasonable, and adequate given the claims, the relief sought, and the Parties' litigation risks; and (3) it was negotiated by, and is recommended by, experienced Class Counsel.

### 1.      The Settlement Agreement Was Reached Via Arms-Length Negotiations and After Thorough Investigation

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or

overreaching by, or collusion among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290 (internal quotations omitted). Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).

The Parties' Settlement Agreement is the product of extensive arms-length negotiations between the parties and their experienced and informed counsel. During the past months, the Parties have been working diligently to finalize the settlement papers and to select a proposed Settlement Administrator. Throughout these negotiations, the parties were represented by counsel experienced in the prosecution, defense and settlement of complex class actions.

The Settlement Agreement was also reached after the Parties' informal and mutual exchange of discovery regarding the legal and factual issues at issue in the Action. Prior to filing suit, and continuing throughout the Litigation, Class Counsel researched standard business practices in using automatic renewals, as well as similar litigation, resolutions, and class-wide settlements. Class Counsel also conducted extensive legal research regarding the potential legal claims. Class Counsel's investigation and research have been maintained throughout the litigation of the Action.

Additionally, this Action presented legal issues addressed in the Parties briefing of Code42's motion to dismiss, as well as research and consideration of several decisions issued in the Automatic Renewal Law context since this Court issued its Order on Code42's motion to dismiss. In negotiating the Settlement Agreement, the Parties and their counsel were informed by the motions practice and the Court's ruling on the motion to dismiss, as well as the developing law in this area.

### 2.    The Settlement Agreement is Fair, Reasonable and Adequate Considering the Alleged Harm and Risk of Litigation

The Settlement Agreement provides substantial, valuable relief that achieves the injunctive relief sought, as well as a monetary benefit, putting it well-within the "range

of reasonableness." All Class Members will receive a payment of approximately $7.00-$7.50 payment without having to take any action. Class Members will receive this payment directly and conveniently via PayPal, and this is on top of receiving the benefit of the bargain for which they paid, i.e. the computer back-up service purchased from Code42. In the aggregate, the approximately 32,200 Class Members will receive approximately $247,500. Similar class-wide auto-renewal settlement proposals have been granted preliminary and final approval.[4]

For perspective, the settlement payment to Class Members exceeds the monthly cost for Code42's "Individual" subscription, which is generally in the range of $1.46 - $5.99 a month, and is more than half of the "Family" subscription, which is generally in the range of $6.00 - $13.99 a month. (Code42 sells most subscriptions on a monthly or annual basis.) It is true that some Class Members may have had subscriptions automatically renewed more than once during the Class Period, and while Plaintiffs believe they would have a credible basis for seeking, at trial, damages based on all such auto-renewals, Code42 has argued that even if Plaintiff's auto-renewal claims had merit (which Code42 disputes), customers would have at least been on notice of Code42's autorenewal pricing after incurring their first auto-renewal charge. Thus, there is uncertainty whether Plaintiff could recover damages per customer on a class-wide basis beyond a single autorenewal transaction.

Additionally, the Settlement Agreement includes important practice changes by Code42 addressing its auto-renewing services to consumers. *See* Section II.A.2 above. Specifically, Code42 now presents its automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled, and is presented in visual proximity to the request for consent to the offer on its website, thus

---

[4] *See e.g. Williamson v. Mcafee, Inc.* (N.D. Cal., Aug. 30, 2016, No. 5:14-CV-00158-EJD) 2016 WL 4524307, at *6 (granting preliminary approval of an auto-renewal class action awarding class members $11.50 each from the defendant, injunctive relief, service awards not to exceed $1,250, and attorneys' fees and costs in an amount not to exceed $2,400,000); *Williamson v. Mcafee, Inc.* (N.D. Cal., Feb. 15, 2017, No. 5:14-CV-00158-EJD) (Dkt. No. 118 granting final approval).

ensuring consumers' affirmative consent to the agreement containing the automatic renewal offer terms.    Additionally, Code42 now provides an acknowledgment that includes the automatic renewal or continuous service offer terms, its cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.    In its acknowledgment, Code42 likewise provides a toll-free telephone number, electronic mail address, and a postal address which provides a cost-effective, timely, and easy-to-use mechanism for cancellation of the automatically renewing subscription in compliance with section 17602(b).

Further, the Settlement Agreement provides for the payment of administrative costs, and Class Counsel's attorneys' fees and costs, on top of the other benefits provided for the Class Members.

The relief obtained for Class Members represents a strong result, particularly given the risks and challenges of ongoing litigation.    Among other arguments that Code42 has made and/or indicated it could make if the Action proceeded are: (a) there is no private right of action under California's Automatic Renewal Law; (b) Plaintiff did not lose money or property in connection with the transactions at issue and therefore does not have standing to pursue a claim under the UCL; (c) Code42's disclosures are and were at all times in complete, or at the very least substantial, compliance with the requirements of California law; (d) no reasonable consumer would have been misled by the statements on Code42's website or would (or could) have believed that he or she was receiving a service in perpetuity in return for a single, one-time payment; (e) Code42's customers received the automatically renewing service and protection from loss of data that they desired at the agreed-upon price, and therefore were not injured, harmed, or damaged in any way; (f) Code42 fully disclosed its prices to consumers in a direct and clear manner; (g) during the class period, Code42's customer service department generally allowed consumers to cancel their renewed subscriptions after the renewal date and generally provided at least a partial refund for the unused or

cancelled portion of the renewal term; and (h) certification of a litigation class would not be appropriate or proper, including because of manageability issues.

While Plaintiff believes she could overcome these challenges, they are indicative of the risks Class Members would face if the Action were to proceed to trial. The proposed Settlement Agreement provides considerable relief while allowing Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

Lastly, the Settlement Agreement provides prompt relief, a significant benefit not available if the Action were to proceed to trial.  A trial could add years to the resolution of this Action given the legal and factual issues raised, as well as the strong of appeals.

### 3.    Counsel's Experience Favors Preliminary Approval

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 378 (9th Cir.1995); *In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 455 (C.D. Cal. 2014).

Here, proposed Class Counsel recommends the Settlement Agreement as fair, adequate, and reasonable.  (Ferrell Decl., ¶¶ 14-16).  Class Counsel has extensive experience litigating and settling consumer class actions, and other complex matters. Class Counsel has conducted an extensive investigation into the factual and legal issues raised in this Action.  The fact that qualified and well-informed counsel endorse the Settlement Agreement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement Agreement.

### C.    The Proposed Direct Notice Program Is Reasonable and Should be Approved

Rule 23(c)(2)(B) demands that notice be

1
2
3
4
5
6

> "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3)."

7
8
9

Notice must likewise include a general description of the proposed settlement. *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

10
11
12
13

The proposed forms of notice here include the required information. (Settlement Agreement, Exs. A- B). The Settlement Agreement's notice program detailed above, which includes direct notice to Class Members, is well-designed to ensure the best notice practicable under the circumstances. *See infra* section III.B.

14

**V.    CONCLUSION**

15
16

Based on the foregoing, Plaintiff respectfully requests the that Court

1.    Grant preliminary approval of the Settlement Agreement;

17
18

2.    For settlement purposes only, certify the proposed Settlement Class, as defined in the Settlement Agreement;

19
20

3.    Appoint Scott J. Ferrell, David W. Reid, and Victoria C. Knowles of Pacific Trial Attorneys APC as Class Counsel;

21

4.    Appoint Plaintiff Jordan Kissel as the Class Representative;

22
23
24

5.    Approve the Parties' proposed notice program, including the proposed forms of notice, as set forth in the Settlement Agreement, and direct that notice be disseminated pursuant thereto;

25
26
27

6.    Appoint JND ("JND") Class Action Administrator as Settlement Administrator, and direct JND to carry out the duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement;

28

7.    Approve the Parties' proposed monetary settlement benefit to the Settlement Class, approve the procedures set forth in the Settlement Agreement for the qualifications of Class Members, approve the method for Class Members to exclude themselves from the Settlement Class, and for Class Members to object to the Settlement;

8.    Stay all non-settlement related proceedings pending Final Approval of the Settlement Agreement; and

9.    Set a Final Approval Hearing and other dates in connection with the final approval of the Settlement Agreement.

Dated:  July 25, 2017                PACIFIC TRIAL ATTORNEYS, APC


                                     By: _/s/ Scott J. Ferrell_____
                                     Scott. J. Ferrell
                                     Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 25, 2017, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell