PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Richard H. Hikida, Bar No. 196149
rhikida@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JORDAN KISSEL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CODE 42 SOFTWARE, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>    Defendants. | Case No. 8:15-cv-01936-JLS-KES<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF HER MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>[Filed concurrently with the Declaration of Jennifer M. Keough] |

## I. CLASS ACTION ADMINISTRATION

Plaintiff Jordan Kissel ("Plaintiff") and Defendant Code42 Software, Inc. ("Code42") (collectively with Plaintiff, the "Parties") agreed upon JND Legal Administration ("JND") as the claims administrator in this action. As further set forth in the concurrently filed Declaration of Jennifer M. Keough, the Chief Executive Officer at JND, JND is competent to carry out the duties of claims administrator in this action.

First, the three founders of JND have over 70 years of combined experience in the law and legal administration industries. (Keough Decl., ¶3). JND has been responsible for designing and implementing over one hundred notice plans for class actions since its founding. (*Id.*) JND has nine offices around the country handling legal administration and a full range of services including Class Action and Mass Tort administration, Bankruptcy Claims Agent work, eDiscovery and Government Services. (*Id.* at ¶4). The JND team has over a 15-year history and has won multiple awards, including being named Best Administrator by the National Law Journal multiple years. (*Id.* at ¶5).

JND has managed hundreds of class action settlements ranging in size from a few dozen class members to millions of class members. (*Id.* at ¶6). It has managed settlements involving consumer, insurance, telecommunications, employment/FLSA, securities, anti-trust, environmental, ADA, and financial issues, among others. (*Id.*) A sample list of JND cases can be found at www.jndla.com. (*Id.*) All of JND's state-of-the-art proprietary administration systems have been developed and customized in-house by its own personnel. (*Id.*)

Second, JND is well-situated to act as the claims administrator in this specific case because JND regularly implements email notice campaigns as part of its administrative duties and as required by Paragraph 4.03 of the Settlement Agreement. (*Id.* at ¶7). In order to maximize the deliverability of the email Notice, JND will use separate, dedicated email servers to send the emails so the email notices are not comingled with corporate emails and marketing emails. (*Id.*) Moreover, just prior to the email notice campaign, JND will ensure its email server is not "blacklisted" by any

blacklist services (e.g. Barracuda). (*Id.*) JND will also thoroughly test the email by sending it to addresses at the most popular email providers, such as Outlook, Google, Yahoo, Hotmail, and AOL, to ensure that the email filters used by those providers do not identify anything in the subject line and email content that would cause it to be treated as spam. (*Id.*) Finally, JND will track and report any email Notice that is undeliverable or otherwise "bounces back." (*Id.*)

Further, JND will notify Code 42 of all undeliverable Class Notices and request a physical mailing address for that Class Member. (*Id.* at ¶8). Upon receipt of the physical mailing address, JND will mail a Postcard Notice to the Class Member. (*Id.*) JND will track and report on all undeliverable Postcard Notices. (*Id.*)

As the Settlement Administrator, JND will also perform additional administrative duties as required such as receive, process and respond to inquiries received from Class Members; receive, process and report on any requests for exclusion or potential objections; promptly fulfill notice requests; provide regular reporting to the parties; create a settlement website; distribute Benefit Payments; and submit a declaration to the Court reporting on the administrative activities performed prior to Final Approval. (*Id.*)

As such, JND is well-situated and well-qualified to act as the claims administrator in this action.

## II. THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND ADEQUATE

Whether a class-wide settlement agreement is fair, reasonable and adequate depends on several factors: " 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.' " *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959 (citations omitted).

With regard to Code42's maximum potential liability, Plaintiff in her complaint sought as damages all amounts paid by all class members in all renewals of the service that Code42 provided to them. Although that is the amount that Plaintiff would have sought if this matter had proceeded to trial, in settlement negotiations Defendant and its counsel asserted, and Plaintiff and her attorneys recognized, that there was a substantial likelihood that even with a favorable ruling on liability, the measure of damages in this case would be limited in at least two ways.

First, this is a case about non-disclosure of the automatic renewal term to class members, and so there is a substantial argument that once class members were charged for their first renewal, they were on notice of the non-disclosed fact and not entitled to further damages. Accordingly, the damages calculation could have been limited to the first renewal only, and would not include fees paid for subsequent renewals.

Second, although a small minority of class members renewed on a monthly basis, the vast majority of class members renewed on an annual basis. For the annual renewal class members, once they were charged for the annual renewal and did not seek to cancel their service or undo the renewal, Defendant argued that they had acquiesced and manifested their agreement to the renewal, and accepted the benefits thereof. Indeed, during the class period, it was the common practice of Code42's customer service personnel to provide full or partial refunds to class members who contacted customer service and stated concerns or complaints about a renewal and asked to cancel their service. There is accordingly a substantial argument that, for annual renewal class members, damages should be limited to the payment made for only the first month of the first renewal period, or 1/12 of the annual renewal amount.

The parties further note that these two arguments regarding the proper measure of damages were considered as part of the "fair, reasonable, and adequate" determination in a class action settlement in California state court involving similar claims against one of Code42's largest competitors, LifeLock. *See Goldman v. LifeLock, Inc.*, Case No. 115CV276235, Order of Final Approval of Class Action Settlement and Judgment, at 3

(Santa Clara County Superior Court Feb. 5, 2016) (noting that class members will receive "more than half of the average monthly revenue" received by LifeLock). That settlement provided a reference point for the parties in negotiating this settlement.

In addition, Defendant also asserted that the vast majority of class members did not object in any way when they were charged for a renewal, and that class members continued to accept the benefits of the service provided by Code42 even after they were plainly on notice of the renewal fees charged to them. Defendant argued (and Plaintiff disagreed) that this fact would negate any claim for damages for the overwhelming majority of the class, who continued to receive a valuable service at the agreed upon price.

Accordingly, providing the Court with a single "maximum potential liability" figure is not as straightforward as in many class actions. Assuming no limit on damages, and the maximum recovery of all renewal fees paid by all class members during the class period, the potential liability could be as high as approximately $6,581,663. Assuming that damages are limited to fees paid on first renewal, the maximum potential recovery for the class is approximately $2,396,162. Assuming that damages are limited to fees paid for the first month of the first renewal, the maximum potential recovery is approximately $265,578.

## III.   "INCENTIVE AWARD" VS. "SERVICE PAYMENT"

Pursuant to the Settlement Agreement, Plaintiff is to receive a Service Payment of $2,500. (Settlement Agreement at 1.31, 4.21). The Settlement Agreement references both an "incentive award" and the Service Payment, but they are one in the same. The Settlement Agreement does not contemplate duplicative payments of $2,500 to Plaintiff, just one Service Payment for her service to the Class.

Dated: September 5, 2017          PACIFIC TRIAL ATTORNEYS, APC

                                  By: _/s/ Scott J. Ferrell_
                                  Scott. J. Ferrell
                                  Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2017, I electronically filed the foregoing **PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF HER MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell