PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Richard H. Hikida, Bar No. 196149
rhikida@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN KISSEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CODE 42 SOFTWARE, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. 8:15-cv-01936-JLS-KES<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date:         February 9, 2018<br>Time:        2:30 p.m.<br>Courtroom:  10-A<br>Judge:        Josephine L. Staton |

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................. 1

II.   SUMMARY OF ALLEGATIONS ........................................................ 2

    A.    Plaintiff's Allegations Regarding the Automatic Renewal Law .............................................................................................. 2

    B.    Procedural History and Settlement Negotiations ........................ 4

III.  THE SETTLEMENT AGREEMENT .................................................. 5

    A.    Benefits Provided to the Settlement Class .................................. 5

        1.    Monetary Compensation .................................................... 5

        2.    Code42's Auto-Renewal Practices ..................................... 6

    B.    Notice Provided to Class Members ............................................. 7

IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.................................................................................. 8

    A.    The Settlement Class May Be Certified for Settlement Purposes...................................................................................... 9

        1.    Rule 23(a) is Satisfied ....................................................... 9

            a)    The Settlement Class is Sufficiently Numerous ....................... 9

            b)    Common Questions Predominate ............................. 9

            c)    Plaintiff's Claims Are Typical to Those of the Class.............................................................................. 10

            d)    Plaintiff and Class Counsel Will Adequately Protect the Interests of the Class................................. 11

        2.    Rule 23(b)(3) is Satisfied ................................................ 12

    B.    Final Approval of the Settlement Agreement is Appropriate ...................... 13

        1.    The Settlement Agreement Was Reached Via Arms-Length Negotiations and After Thorough Investigation .................................................................... 13

        2.    The Settlement Agreement is Fair, Reasonable and Adequate Considering the Alleged Harm and Risk of Litigation ................................................................... 14

           3.      Counsel's Experience Favors Preliminary Approval ........................... 17

    C.     The Response from the Class Favors Final Approval .................................... 18

V.    CONCLUSION ..................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................12

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ...........................................................17

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .....................................................................13

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..............................................................13, 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................9, 10, 11, 13

*Hanlon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ..................................................................9, 10

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........................................14

*In re Pacific Enterprises Securities Litigation*,
    47 F.3d 373 (9th Cir.1995) ........................................................................17

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ...................................................................13

*In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act (FACTA) Litigation*,
    295 F.R.D. 438 (C.D. Cal. 2014)...............................................................17

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) ............................9

*Kissel v. Code 42 Software, Inc.* (C.D. Cal., Apr. 14, 2016)
    2016 WL 7647691 ........................................................................................4

*L.H. v. Schwarzenegger*,
    No. CIV. S-06-2042LKKGGH, 2007 WL 662463 (E.D. Cal. Feb. 28, 2007)..........................11, 12

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F. 2d 507 (9th Cir. 1978) ....................................................................12

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ...................................................................12

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) .....................................................................11

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Otsuka v. Polo Ralph Lauren Corp.*,
   251 F.R.D. 439 (N.D. Cal. 2008) ...................................................................13

*Simpson v. Fireman's Fund Ins. Co.*,
   231 F.R.D. 391 (N.D. Cal. 2005) ...................................................................11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...........................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ..............................9

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) .......................................................................12

*Williamson v. Mcafee, Inc.*
   (N.D. Cal., Aug. 30, 2016, No. 5:14-CV-00158-EJD) 2016 WL 4524307 ....15

*Zinser v. Accufix Research Inst.*,
   253 F.3d 1180 (9th Cir. 2001) .........................................................................9

**California Statutes**

Business & Professions Code
   § 17200 *et seq.* ................................................................................... *passim*
   § 17535 .............................................................................................................4
   § 17600 *et seq.* ................................................................................................1
   § 17600-06 .......................................................................................................7
   § 17601 ...........................................................................................................10
   § 17601(a) .....................................................................................................5, 8
   § 17601(d) .....................................................................................................5, 8
   § 17601 (e) ....................................................................................................5, 8
   § 17601(b) ........................................................................................................3
   § 17602(a)(l) .......................................................................................2, 6, 10, 18
   § 17602(a)(2) ....................................................................................................6
   § 17602(a)(3) ..................................................................................................10

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................4

Fed. R. Civ. P. 23(a) ................................................................................9, 10, 11

Fed. R. Civ. P. 23(a)(1) .......................................................................................9

Fed. R. Civ. P. 23(a)(2) .......................................................................................9

Fed. R. Civ. P. 23(a)(3) .................................................................................10, 11

Fed. R. Civ. P. 23(a)(4) .....................................................................................11

Fed. R. Civ. P. 23(b) ...........................................................................................9

Fed. R. Civ. P. 23(b)(2) .....................................................................................12

Fed. R. Civ. P. 23(b)(3) ..................................................................................................12

Fed. R. Civ. P. 23(e)(2) ..................................................................................................13

## I.   INTRODUCTION

Plaintiff Jordan Kissel ("Plaintiff") respectfully requests the Court reaffirm its preliminary approval of the Class Action Settlement Agreement ("Settlement Agreement")[1] and grant final approval thereof.[2]  As previously set forth, pursuant to the proposed Settlement Agreement, Defendant Code42 Software, Inc. ("Code42") (collectively with Plaintiff, the "Parties") will provide a full-distribution, non-reversionary $400,000 Common Fund that will provide a settlement payment of approximately $7.00 to $7.50 to all members of the Settlement Class.  The settlement amount represents compensation for Code42's alleged violation of California Business & Professions Code Section 17600 *et seq.*, (the "Automatic Renewal Law") for which the Settlement Class received the benefit of the bargain, i.e. the Settlement Class received the service for which they paid and will be receiving this additional monetary benefit on top thereof.  In the aggregate, the 31,258 Class Members will receive approximately $247,500 (Net Settlement Amount), and as of the date of this Motion, *more than 99.9% of the Class is participating in, and subject to final approval, shall receive the benefits of the Settlement Agreement*.

Additionally, Code42 has already implemented important changes to its auto-renewal transactions with regard to both pre-purchase disclosures and post-purchase acknowledgements provided to the Settlement Class and other consumers of Code42's services.  The Settlement Agreement acknowledges the changes already made by Code42 and solidifies its agreement to maintain its compliance with the Automatic Renewal Law in the updated form currently provided to consumers, or in some other form that complies with the Automatic Renewal Law in the future should Code42 opt to modify or update its disclosure and acknowledgement language.

---

[1] The proposed Class Action Settlement Agreement is attached to the concurrently filed supporting declaration of Scott J. Ferrell as Exhibit 1.

[2] As of the date of this Motion, the Objection and Exclusion Period remains open for the last Postcard Notice provided to Class Members.  As such, the Claims Administrator is still administering the Class. *See generally*, Declaration of Jennifer Keough.

The Settlement Agreement provided a robust, multi-form direct notice program that was well-tailored to provide Class Members the best notice practicable of the Action, the terms of the Settlement Agreement, Class Counsel's fee and cost application, and Class Members' opt-out rights and rights to object. Further, the Common Fund provided in the Settlement Agreement accounts for the costs of the Settlement Administrator, including the costs of notice and distribution of the settlement benefits, in addition to (*i.e.,* on top of) the other benefits of the Settlement Agreement.

As of the date of this motion, there has been ***only one objection*** from a Class Member, only four opt-outs, and 226 claim forms have been submitted. (Keough Decl., ¶¶ 9-12).  Of the 226 claims submitted, 43 are already Members of the Class and need not have submitted a claim to receive the benefits of the Settlement. (*Id.* at ¶ 12).  The remaining 183 claim forms were submitted by non-class members ineligible for the Settlement Benefits. (*Id.*)  The final objection and exclusion post-mark deadline for those Members of the Class that received the second Postcard Notice pursuant to the Settlement Agreement is January 19, 2018.[3] (*Id.* at ¶ 11; Settlement Agreement, sec. V).  Accordingly, there appears to be near uniform support for the Settlement, thus warranting a final determination by the Court that it is fair, adequate and reasonable in accordance with its previous, preliminary determination that the Settlement provides "a substantial benefit to the class".  (Dkt. No. 47 at 15:12).

## II.   SUMMARY OF ALLEGATIONS

### A.   Plaintiff's Allegations Regarding the Automatic Renewal Law

As set forth in the First Amended Complaint ("FAC"), Plaintiff alleged four causes of action for violations of the Automatic Renewal Law and California's Unfair Competition Law (Cal. Bus. & Prof. Code §17200 *et seq.*) ("UCL").  Specifically, she alleged that Code42: (1) violated Business & Professions Code § 17602(a)(l)) by failing

---

[3] Plaintiff shall submit a supplemental brief in support of her Motion for Final Approval should any valid, additional requests for exclusion and/or objections be received between the date of filing and the close of the final exclusion and objection deadline.

to present automatic renewal offer terms[4] and/or continuous service offer terms "clearly and conspicuously" and in "visual proximity" "to the request for consent to the offer" (First Cause of Action); (2) violated sections 17602(a)(2) and 17603 by failing to obtain Plaintiff's affirmative consent before the subscription was fulfilled (Second Cause of Action); (3) violated sections 17602(a)(3) and 17602(b) by failing to provide an acknowledgment with automatic renewal offer terms and information regarding Code42's cancellation policy (Third Cause of Action); and (4) due to these enumerated violations, in turn, violated the UCL (Fourth Cause of Action).

As factual support for these claims, Plaintiff alleged that she purchased a subscription for Code42's "CrashPlan" computer backup and related services. (FAC, ¶¶ 7, 17). While the terms and conditions on Code42's website, code42.com/crashplan, at the time of purchase contained some information concerning the subscription and related issues, Plaintiff alleged the information was buried within numerous other provisions, and it was not set forth with the requisite clarity required by the Automatic Renewal Law. (FAC, ¶¶ 18-19). Additionally, Plaintiff alleged the pages on Code42's website whereby the subscription purchase was completed did not include the requisite information concerning the automatic renewal of the subscription or information concerning how that subscription could be cancelled.  (FAC, ¶¶ 20-23).  Finally, Plaintiff alleged the acknowledgment of purchase provided to Plaintiff did not contain the requisite automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that was capable of being retained by Plaintiff.  (FAC, ¶ 24).

---

[4] "'Automatic renewal offer terms' means the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any." (Cal. Bus. & Prof. Code § 17601(b).)

**B.**      <u>Procedural History and Settlement Negotiations</u>

Plaintiff filed her original class action complaint as "Jane Doe" against Code42 on November 19, 2015 (Dkt. No. 1).  On February 10, 2016 Plaintiff filed the FAC (Dkt. No. 17) identifying herself and likewise making other amendments to the operative complaint, including the elimination of a cause of action for injunctive relief pursuant to Cal. Bus. & Prof. Code § 17535.

Thereafter, on February 29, 2016, Code42 moved to dismiss the FAC (Dkt. No. 19) pursuant to Federal Rule of Civil Procedure 12(b)(6).  On April 14, 2016 this Court issued its Order Denying Defendant's Motion to Dismiss, *Kissel v. Code 42 Software, Inc.* (C.D. Cal., Apr. 14, 2016) 2016 WL 7647691 (Dkt. No. 25).  On April 28, 2016, Code42 filed its Answer to Plaintiff's FAC (Dkt. No. 29).

The Parties thereafter engaged in an informal exchange of discovery, including the revisions Code42 made to its auto-renewal practices in response to Plaintiff's allegations. Code42 revised and enhanced its disclosures and acknowledgments to consumers relating to the Automatically Renewing Services offered to Consumers in the State of California.  Specifically, Code42 now presents its automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled, and is presented in visual proximity to the request for consent to the offer on its website, thus ensuring consumers' affirmative consent to the agreement containing the automatic renewal offer terms.  Additionally, Code42 now provides an acknowledgment that includes the automatic renewal or continuous service offer terms, its cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.   In its acknowledgment, Code42 likewise provides a toll-free telephone number, electronic mail address, and a postal address which provides a cost-effective, timely, and easy-to-use mechanism for cancellation of the automatically renewing subscription.  (Settlement Agreement at 3.02).

The informal exchange of discovery between the Parties led to extensive, arms-length settlement negotiations to resolve this Action on a class-wide basis.  On March 3,

2017 the Parties reached a class-wide settlement in principle and filed a Joint Notice of Proposed Class Action Settlement (Dkt. No. 33) pursuant thereto. The Court preliminarily approved the Settlement Agreement on October 4, 2017 (Dkt. Nos. 47, 49). Since preliminary approval, the Claims Administrator provided the robust, multi-form direct notice program to the Class, as addressed herein.

## III.  THE SETTLEMENT AGREEMENT

Plaintiff seeks to finally certify the following Settlement Class:

> All "Consumers" (as that term is defined by California Business and Professions Code § 17601(d)) within the State of California who purchased any product or service from Code42 as part of an "Automatic Renewal" or "Continuous Service" plan or arrangement (as those terms are defined by California Business and Professions Code § 17601(a) and (e)) between November 19, 2011 and November 19, 2015, inclusive (the "Class Period"), and who were subsequently charged by and paid Code42 one or more fees for the renewal of the product or service beyond the original term prior to July 24, 2017, the effective date of the Settlement Agreement. Excluded from the Settlement Class are the officers and directors of Code42, members of the immediate families of the officers and directors of Code42, and their legal representatives, heirs, successors or assigns, and any entity in which they have or have had a controlling interest.

(Settlement Agreement at 2.01).

### A.  **Benefits Provided to the Settlement Class**

#### 1.  **Monetary Compensation**

Pursuant to the Settlement Agreement, Code42 has agreed to create a Common Fund in the total amount of Four Hundred Thousand Dollars ($400,000) for the payments to members of the Settlement Class, payment of claims administration, attorneys' fees and costs, and a Service Payment to Plaintiff. (Settlement Agreement at 3.01). Exclusive of the requested attorneys' fees and costs, the requested incentive payment to Plaintiff for her role as Class Representative, and the estimated $40,000 for Class Administration, it is estimated that approximately $247,500 shall be payable directly to Class Members ("Net Settlement Amount"). Code42 and the Claims Administrator have determined that there are 31,258 Class Members and as such, it is

anticipated that each Class Member will receive approximately $7.00 to $7.50 each from the Common Fund.

The Settlement Agreement proposes each Class Member to be paid their settlement benefit via their registered email address with Code42 and a PayPal link. Notice was provided directly to Class Members via the Email Notice and, where necessary due to "bounce-backs", two times by mail via the Postcard Notice.  Members of the Settlement Class were not required to submit a claim to receive benefits under the Settlement Agreement.  Individuals who believed that they are or may be members of the Settlement Class but who did not receive a Class Notice were permitted to submit a claim form to the Settlement Administrator to request that they be included on the Final Settlement Class Member List and receive a Benefit Payment following Final Approval. (Settlement Agreement at 4.07; Ex. C).  As of the date of this motion, 226 claim forms have been received by the Claims Administrator.  (Keough Decl., ¶ 12).  Of the 226 claim forms, 43 are confirmed members of the Class, and the remaining 183 are non-class members ineligible for the Settlement Benefits.  (*Id.*)

Pursuant to the Settlement Agreement, within the later of (a) forty-five (45) days after Final Approval or (b) fifteen (15) days after final court resolution of any objection, the Settlement Administrator shall send the Benefit payment via PayPal directly to each Class Member.  (Settlement Agreement at 5.02).

### 2.     Code42's Auto-Renewal Practices

Code42 has already undertaken steps to remediate the alleged violations of the Automatic Renewal Law in response to the allegations raised by Plaintiff.  Code42 revised and enhanced its disclosures and acknowledgments to Consumers relating to the Automatically Renewing Services offered to Consumers in the State of California. Specifically, pursuant to California Business & Professions Code § 17602(a)(1), (2), Code42 now presents its automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled, and is presented in visual proximity to the request for consent to the offer on its website, thus ensuring

consumers' affirmative consent to the agreement containing the automatic renewal offer terms.  Additionally, in accordance with section 17602(a)(3), Code42 now provides an acknowledgment that includes the automatic renewal or continuous service offer terms, its cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.   In its acknowledgment, Code42 likewise provides a toll-free telephone number, electronic mail address, and a postal address which provides a cost-effective, timely, and easy-to-use mechanism for cancellation of the automatically renewing subscription in compliance with section 17602(b).  Code42 will continue to provide such disclosures, either in the form that Code42 has used since November 2015, or in some other form that complies with the provisions of California Business & Professions Code sections 17600-06, in relation to the Automatically Renewing Services that Code42 offers to Consumers in the State of California. (Settlement Agreement at 3.02).

### B.    Notice Provided to Class Members

In its Preliminary Approval Order, the Court directed that the Parties make certain modifications to their proposed form of notice to the Class.  (Dkt. No. 47). The Parties made such modifications and submitted the revised form of Notice to the Court (Dkt. No. 48), which was approved by the Court.  (Dkt. No. 49).

Code42 then provided to the Claims Administrator, JND Legal Administration ("JND"), the names, email addresses, and current addresses on file for each of the 31,258 Class Members. (Keough Decl., ¶ 4).  JND is a highly experienced class action notice and settlement administrator.   (Dkt. No. 46-1 at ¶¶ 3-9).   JND thereafter formatted the Email and Postcard Notices and, on November 3, 2017 initiated the Notice Plan to all 31,258 Class Members in accordance with the terms of the Settlement Agreement and Preliminary Approval Order.  (Keough Decl., ¶¶ 5-7).

JND first provided the Email Notice to all 31,258 Class Members via the email addresses provided by Code42.  (*Id.* at ¶5).  JND has determined that as of the date of this motion, only 1,627 Email Notices were undeliverable (or 5% of the total number of

Class Members).  (*Id.*)  For each of the undeliverable emails, a Postcard Notice was sent to the mailing addresses provided by Code42 and confirmed and/or updated after confirming with the National Change of Address (NCOA) database.  (*Id.* at ¶ 6).  Of those Postcard Notices, only 77 were returned as undeliverable (or .2% of the total Class Members).   Thereafter, JND performed address research on the remaining undeliverables received before December 5, 2017 and re-mailed to the 45 Class Members for whom updated addresses were found.   (*Id.* at ¶ 7).   As such, *approximately 99.9% of Class Members received direct notice of the Settlement Agreement*.

In addition to the Direct Notice provided by JND to the Class Members, JND additionally established the Settlement Website, www.kisselcrashplansettlement.com, and the 1-844-859-6770 toll-free telephone number on November 3, 2017, which remains active as of the date of this Motion.  (*Id.* at ¶ 8).

As of the date of this Motion, only four opt-outs and *one* objection have been received by JND.  (*Id.* at ¶¶ 9, 10).

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

In its Preliminary Approval Order, the Court evaluated the propriety of class certification for settlement purposes and conditionally certified the following Class:

> All "Consumers" (as that term is defined by California Business and Professions Code § 17601(d)) within the State of California who purchased any product or service from Code42 as part of an "Automatic Renewal" or "Continuous Service" plan or arrangement (as those terms are defined by California Business and Professions Code § 17601(a) and (e)) between November 19, 2011 and November 19, 2015, inclusive (the "Class Period"), and who were subsequently charged by and paid Code42 one or more fees for the renewal of the product or service beyond the original term prior to July 24, 2017, the effective date of the Settlement Agreement. Excluded from the Settlement Class are the officers and directors of Code42, members of the immediate families of the officers and directors of Code42, and their legal representatives, heirs, successors or assigns, and any entity in which they have or have had a controlling interest.

(Settlement Agreement at 2.01; Dkt. No. 47 at 22).

Where a settlement is reached prior to class certification, the Court shall, in addition to evaluating the fairness of the settlement, ratify the propriety of the certification in connection with a motion for final approval. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). As demonstrated below, there is no basis for the Court to retract from its grant of preliminary certification, and final certification of the Settlement Class is therefore appropriate.

### A.    The Settlement Class May Be Certified for Settlement Purposes

To certify a proposed class, it must be demonstrated that "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (emphasis added), *amended by* 273 F.3d 1266 (9th Cir. 2001).

### 1.    Rule 23(a) is Satisfied

### a)    The Settlement Class is Sufficiently Numerous

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). Here, Code42's and JND's records indicate there are 31,258 Class Members and as such, numerosity is satisfied.

### b)    Common Questions Predominate

Rule 23(a)(2) requires that there be one or more questions common to the class. *See Hanlon*, 150 F.3d 1011, 1019 (9th Cir. 1998); 1 Newberg § 3.10; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). The causes of action raise questions common to the Settlement Class, including: (i) whether Code42 failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or

purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) whether Code42 charged the Class Members' Payment Method for an automatic renewal or continuous service without first obtaining Class Members' affirmative consent in violation of Cal. Bus. & Prof. Code§ 17602(a)(2); (iii) whether Code42 failed to provide an acknowledgement that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Class Members in violation of Cal. Bus. & Prof. Code § 17602(a)(3); and (iv) whether Code42's Terms and Conditions contained the automatic renewal offer terms and/or continuous service offer terms as defined by Cal. Bus. & Prof. Code § l760l.  (FAC at ¶ 28).

Here the Court has already preliminarily determined that common questions predominate and no facts have arisen since its Preliminary Approval Order to alter its finding.  (Dkt. No. 47 at 7:17-8:14).

### c)      Plaintiff's Claims Are Typical to Those of the Class

"The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"  *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(3)).  "Under the rule's *permissive* standards, representative claims are 'typical' if they are *reasonably co-extensive* with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020 (emphasis added).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon*, 976 F.2d at 508.  "'Typicality refers to the *nature* of the claim or defense of the class representative, and *not to the specific facts from which it arose* or the relief sought.'"  *Id.* (citation omitted) (emphasis added).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Id.*

(citation omitted). "Under Rule 23(a)(3), it is not necessary that all class members suffer the same injury as the class representative." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (citing *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.")); *L.H. v. Schwarzenegger*, No. CIV. S-06-2042LKKGGH, 2007 WL 662463, at *12 (E.D. Cal. Feb. 28, 2007) (holding that "minor differences among the class are inconsequential," and rejecting the defendants' assertion that plaintiffs had not shown sufficient evidence that each plaintiff was disabled since the deprivations complained of by plaintiffs affected the entire class).

Here, Plaintiff's claims stem from the same common course of conduct as the claims of the Class Members. Plaintiff and all Members of the Settlement Class were presented with the same auto-renewal disclosures and post-purchase acknowledgements via email. Indeed, the Settlement Class is specifically delineated by date, i.e. November 19, 2011 and November 19, 2015, to include only those consumers who were offered the same auto-renew disclosures and received the same post-purchase auto-renew acknowledgement. As such, there are no facts that tend to undermine this Court's previous determination that the typicality requirement is already satisfied. (Dkt. No. 47 at 8:15-9:4).

### d)    Plaintiff and Class Counsel Will Adequately Protect the Interests of the Class

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)). "Resolution of two questions determines legal adequacy: (1) does the named plaintiff and her counsel have any conflicts of interest with other class members; and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class?" *Id*. The class representative may not have

interests antagonistic to the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978).  Both questions are answered in the affirmative here.

The Court previously found that Plaintiff is an adequate representative because: 1) her claims arise out of the same facts as the Class Members' claims; 2) her interest in obtaining the maximum recovery is coextensive with the interest of the Class; 3) she has been actively involved in the case; and 4) there are no signs of any potential conflict between Plaintiff and the Class. (Dkt. No. 47 at 9:6-16).

The Court also found that Plaintiff's Counsel, Scott J. Ferrell, David W. Reid, and Victoria C. Knowles of Pacific Trial Attorneys satisfy the adequacy requirement based on their demonstrated experience and work in the matter thus far. (*Id.* at 11:16-12:5). There is no basis to disturb these findings and the adequacy requirement therefore remains satisfied.

### 2.  Rule 23(b)(3) is Satisfied

Pursuant to Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[, e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). *Id.*

As already expressed herein, and as determined by this Court, Plaintiff and the Class allege that Code42 had a standard and uniform practice of failing to comply with the Automatic Renewal Law by failing to comply with the pre-purchase notification and post-purchase acknowledgement requirements.  Common issues predominate here. That is particularly so given that, if the Settlement Agreement is approved, there will be no need for a trial, and thus manageability of the Settlement Class for trial need not be considered. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

Additionally, a class action is superior to other methods of litigation where, as here, class treatment will promote greater efficiency. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.

2001); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008). Indeed, the Court has already preliminarily determined as much. (Dkt. No. 47 at 10:21-11:14).

### B. Final Approval of the Settlement Agreement is Appropriate

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026. The Court should give "proper deference to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027; *see also* Fed. R. Civ. P. 23(e)(2).

Here, the Court has already conducted a thorough analysis and preliminarily determined that the Settlement is fair, reasonable and adequate. (Dkt. No. 47). The Parties have since provided notice of the Settlement to the Class and, as noted above, only one Class Member has objected to the Settlement and only four Class Members have opted out of the Settlement. Similarly, no person or party has sought to intervene.

Accordingly, there is broad, overwhelming support of the Settlement Agreement from the Class Members and as such, Plaintiff respectfully requests that the Court grant final approval for the same reasons that it granted preliminary approval.

### 1. The Settlement Agreement Was Reached Via Arms-Length Negotiations and After Thorough Investigation

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290 (internal quotations omitted).  Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).

Here, the Parties' Settlement Agreement is the product of extensive arms-length negotiations between the Parties and their experienced and informed counsel.  The Parties worked diligently to finalize the Settlement Agreement and to select a proposed Settlement Administrator. Throughout these negotiations, the Parties were represented by counsel experienced in the prosecution, defense and settlement of complex class actions.

The Settlement Agreement was also reached after the Parties' informal and mutual exchange of discovery regarding the legal and factual issues at issue in the Action. Prior to filing suit, and continuing throughout the Litigation, Class Counsel researched standard business practices in using automatic renewals, as well as similar litigation, resolutions, and class-wide settlements. Class Counsel also conducted extensive legal research regarding the potential legal claims. Class Counsel's investigation and research have been maintained throughout the litigation of the Action.

Additionally, this Action presented legal issues addressed in the Parties' briefing of Code42's motion to dismiss, as well as research and consideration of several decisions issued in the Automatic Renewal Law context since this Court issued its Order on Code42's motion to dismiss.  In negotiating the Settlement Agreement, the Parties and their counsel were informed by the motions practice and the Court's ruling on the motion to dismiss, as well as the developing law in this area.

### 2.     The Settlement Agreement is Fair, Reasonable and Adequate Considering the Alleged Harm and Risk of Litigation

The Settlement Agreement provides substantial, valuable relief that achieves the injunctive relief sought, as well as a monetary benefit, putting it well-within the "range of reasonableness."  All Class Members will receive a payment of approximately $7.00 to $7.50 without having to take any action.  Class Members will receive this payment directly and conveniently via PayPal, and this is on top of receiving the benefit of the bargain for which they paid, i.e. the computer back-up service purchased from Code42. In the aggregate, the 31,258 Class Members (less the four current opt-outs, and any additional valid opt-outs) will receive approximately $247,500.  Similar class-wide auto-renewal settlement proposals have been granted preliminary and final approval.[5]

For perspective, the settlement payment to Class Members exceeds the monthly cost for Code42's "Individual" subscription, which is generally in the range of $1.46 - $5.99 a month, and is more than half of the "Family" subscription, which is generally in the range of $6.00 - $13.99 a month.  (Code42 sells most subscriptions on a monthly or annual basis.)   It is true that some Class Members may have had subscriptions automatically renewed more than once during the Class Period, and while Plaintiff believes she would have a credible basis for seeking, at trial, damages based on all such auto-renewals, Code42 has argued that even if Plaintiff's auto-renewal claims had merit (which Code42 disputes), customers would have at least been on notice of Code42's autorenewal pricing after incurring their first auto-renewal charge. Thus, there is uncertainty whether Plaintiff could recover damages per customer on a class-wide basis beyond a single autorenewal transaction.

Additionally, the Settlement Agreement includes important practice changes by Code42 addressing its auto-renewing services to consumers.  *See* Section II.A.2 above. Specifically, Code42 now presents its automatic renewal offer terms in a clear and

---

[5] *See e.g. Williamson v. Mcafee, Inc.* (N.D. Cal., Aug. 30, 2016, No. 5:14-CV-00158-EJD) 2016 WL 4524307, at *6 (granting preliminary approval of an auto-renewal class action awarding class members $11.50 each from the defendant, injunctive relief, service awards not to exceed $1,250, and attorneys' fees and costs in an amount not to exceed $2,400,000); *Williamson v. Mcafee, Inc.* (N.D. Cal., Feb. 15, 2017, No. 5:14-CV-00158-EJD) (Dkt. No. 118 granting final approval).

conspicuous manner before the subscription or purchasing agreement is fulfilled, and is presented in visual proximity to the request for consent to the offer on its website, thus ensuring consumers' affirmative consent to the agreement containing the automatic renewal offer terms.   Additionally, Code42 now provides an acknowledgment that includes the automatic renewal or continuous service offer terms, its cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.   In its acknowledgment, Code42 likewise provides a toll-free telephone number, electronic mail address, and a postal address which provides a cost-effective, timely, and easy-to-use mechanism for cancellation of the automatically renewing subscription in compliance with section 17602(b).

Further, the Settlement Agreement provides for the payment of administrative costs, and Class Counsel's attorneys' fees and costs, on top of the other benefits provided for the Class Members.

The relief obtained for Class Members represents a strong result, particularly given the risks and challenges of ongoing litigation.   Among other arguments that Code42 has made and/or indicated it could make if the Action proceeded are: (a) there is no private right of action under California's Automatic Renewal Law; (b) Plaintiff did not lose money or property in connection with the transactions at issue and therefore does not have standing to pursue a claim under the UCL; (c) Code42's disclosures are and were at all times in complete, or at the very least substantial, compliance with the requirements of California law; (d) no reasonable consumer would have been misled by the statements on Code42's website or would (or could) have believed that he or she was receiving a service in perpetuity in return for a single, one-time payment; (e) Code42's customers received the automatically renewing service and protection from loss of data that they desired at the agreed-upon price, and therefore were not injured, harmed, or damaged in any way; (f) Code42 fully disclosed its prices to consumers in a direct and clear manner; (g) during the class period, Code42's customer service department generally allowed consumers to cancel their renewed subscriptions

after the renewal date and generally provided at least a partial refund for the unused or cancelled portion of the renewal term; and (h) certification of a litigation class would not be appropriate or proper, including because of manageability issues.

While Plaintiff believes she could overcome these challenges, they are indicative of the risks Class Members would face if the Action were to proceed to trial. The Settlement Agreement provides considerable relief while allowing Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

Lastly, the Settlement Agreement provides prompt relief, a significant benefit not available if the Action were to proceed to trial.  A trial could add years to the resolution of this Action given the legal and factual issues raised, as well as the strong of appeals.

### 3.    Counsel's Experience Favors Preliminary Approval

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 378 (9th Cir.1995); *In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 455 (C.D. Cal. 2014).

Here, proposed Class Counsel recommends the Settlement Agreement as fair, adequate, and reasonable.  (Ferrell Decl., ¶¶ 14-16).  Class Counsel has extensive experience litigating and settling consumer class actions, and other complex matters. Class Counsel has conducted an extensive investigation into the factual and legal issues raised in this Action.  The fact that qualified and well-informed counsel endorse the Settlement Agreement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement Agreement.

/ / /

/ / /

**C.     The Response from the Class Favors Final Approval**

As noted above, only four requests for exclusion and just one objection (the "Deley Objection") have been received from Class Members thus far.  (Ferrell Decl., Ex. 2).   The Deley Objection disputes Plaintiff's contentions regarding the adequacy of Code42's disclosure of its autorenewal terms by contending "[Code42's] website clearly indicated the terms of the automatic renewal service."  (*Id.*)  Included with the Deley Objection was an alleged screenshot of Code42's website where its "risk free cancellation policy" is "conspicuous on the left side."  (*Id.*)

The Deley Objection does not address the Settlement Agreement, its terms, or its fairness, at all.   In short, the Deley Objection merely takes factual dispute with Plaintiff's underlying allegations as they relate to Business & Professions Code § 17602(a)(l), Plaintiff's first cause of action.   The Deley Objection does not address Plaintiff's remaining causes of action, specifically Code42's post-purchase acknowledgment procedures, and does not present any legal or factual bases for the Court to determine the Settlement Agreement should not be approved.

Further, the screen shot upon which the Deley Objection relies does not reflect or include a date the screen shot was taken and as such, it is unclear whether the screen shot was captured during the Class Period, and further, where in the subscription/sign-up process the alleged "cancellation policy" is included.  As such, the Deley Objection fails to provide a basis upon which to hold up final approval of this valuable class resolution.  The Deley Objection must be overruled.

In short, more than 99.9% of the Class supports and is participating in the Settlement, and shall receive the substantial benefits provided thereby subject to the Court's final approval.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order:

a.      Approving the proposed Settlement Agreement as fair, reasonable, and adequate to Plaintiff and the Class Members, and directing the Settlement's consummation according to its terms;

b.      Finding that the form and manner of the Notice Program implemented pursuant to the Settlement Agreement: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the litigation, the terms of the proposed Settlement, the right to object to the proposed Settlement or exclude themselves from the Class, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

c.      Finding that all Class Members shall be bound by the Settlement, including the release provisions and covenant not to sue;

d.      Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement;

e.      Incorporating the release and related provisions set forth in the Settlement and barring any Released Claims against the Released Persons;

f.      Approving payment of the benefits to the class members consistent with the Settlement; and

g.      Retaining jurisdiction of all matters relating to the interpretation, administration, implementation, and enforcement of the Settlement.

Dated:  December 22, 2017            PACIFIC TRIAL ATTORNEYS, APC


                                     By: _/s/ Scott J. Ferrell_____
                                     Scott. J. Ferrell
                                     Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2017, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell